UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:12-CV-00024-JHM

THE NETHERLANDS INSURANCE COMPANY,
Independently and as Subrogee of Thomas Duffy, Sr.;
Thomas Duffy, Jr.; David Hargiss; Brian Bobbitt;
Josh Boston; Thomas Richey; Bruce Swanson; and
Jerry Mezuer                                                             PLAINTIFF

V.

LEXINGTON INSURANCE COMPANY                          DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Netherlands Insurance Company's Motion for

Summary Judgment [DN 16]. Also before the Court is Defendant Lexington Insurance Company's

Motion for Summary Judgment [DN 22] and its Motion in Limine to Strike Plaintiff's Expert Testimony

[DN 27]. Fully briefed, this matter is ripe for decision. For the following reasons, Netherlands' summary

judgment motion is **DENIED**; Lexington's summary judgment motion is **GRANTED** in part and

**DENIED** in part; and Lexington's motion in limine to strike Netherlands' expert is **GRANTED**.

I. BACKGROUND

On July 19, 2006, Ryan Owens died after participating in football practice for his Henderson

County High School team. His parents filed a wrongful death action in the Henderson Circuit Court,

naming eight football coaches as defendants. The case was styled Estate of Ryan Morgan Owens,

et al. v. Tom Duffy, Sr., et al., Civil Action No. 07-CI-00084. Plaintiff, the Netherlands Insurance

Company ("Netherlands"), issued an insurance policy that provided commercial general liability

insurance coverage to the Henderson County Board of Education. This policy covered the coaches

and provided a coverage limit of $1,000,000. Due to this policy, Netherlands began defending the

coaches, retaining the law firm of English, Lucas, Priest & Owsley, LLP to represent them.

At some point thereafter, Netherlands learned that the coaches had additional commercial general liability insurance available through Defendant, Lexington Insurance Company ("Lexington"). Lexington had issued an insurance policy that provided coverage to the National Organization of Coaches Associations Directors. This policy provided a coverage limit of $1,000,000 per coach. Netherlands notified Lexington of the underlying lawsuit and representatives of the two companies began discussing coverage issues. (Aff. of David J. Riley [DN 22-4]; E-mail to David Riley [DN 16-4].) It is undisputed that at one point, the representatives discussed splitting the defense costs evenly. (Id.) A dispute arose regarding the priority of coverage, however, and ultimately, a declaratory judgment action was filed in this Court. Priority was determined by an Agreed Order dated November 4, 2010. (Agreed Order [DN 22-3].) The Agreed Order provides that Netherlands is the primary carrier up to its limit of $1,000,000 and that Lexington is the secondary carrier up to its limit of $1,000,000 per coach. (Id.)

Litigation of the underlying case continued after this Agreed Order was entered. Netherlands asserts that during this litigation, it paid $207,565.15 in attorneys' fees and an additional $19,085.42 in other expenses. According to Netherlands, when the parties' representatives discussed coverage issues, Lexington agreed to pay for, or reimburse Netherlands for, one-half of the defense expenses and one-half of the attorneys' fees in relation to defending the coaches. (See Pl.'s Mem. in Supp. of Mot. for Summ. J. [DN 16-1] 2.) It thus argues that Lexington owes $113,325.29 under their agreement. Because Lexington has not paid this amount, Netherlands filed the instant lawsuit for subrogation (Count I), breach of contract (Count II), and unjust enrichment (Count III). (Compl. [DN 1].)

2

Lexington counters that the parties never entered into an agreement to divide defense costs and attorneys' fees evenly. (Aff. of David J. Riley [DN 22-4] ¶¶ 5–9.) According to Lexington, after the Agreed Order was entered, there was no need for the companies to agree on attorneys' fees since insurance law provides that the primary insurer—here, Netherlands—is responsible for the costs of providing a defense to the insured when more than one insurer is liable. In other words, Lexington asserts that there was never any enforceable contract between the companies.

Additionally, Lexington highlights that it has paid $101,679.82 in legal fees and expenses relating to the coaches' defense. As discussed above, at the time that the parties discussed coverage issues, Netherlands had already retained English, Lucas, Priest & Owsley, LLP to represent the coaches. (Pl.'s Mem. [DN 16-1] 3; Def. Lexington Ins. Co.'s Resp. to the Pl.'s Mot. for Summ. J. [DN 21] 4.) At some point, though, Lexington became concerned that the firm was not actively pursuing a causation defense on the coaches' behalf. (Aff. of David J. Riley [DN 22-4] ¶¶ 13–14.) Lexington thus hired Boehl, Stopher & Graves. After the parties settled in December 2011, Lexington paid Boehl, Stopher & Graves $101,679.82 in fees and expenses. (Id. ¶¶ 14–16.) Thus, Lexington argues that the amounts paid by the insurers already represent an equitable distribution of the costs. Finally, Lexington notes that the terms of its insurance policy specifically state that when its policy is excess to another policy, it has no duty to defend a suit that any other insurer has a duty to defend. (Lexington Ins. Co. Commercial Gen. Liab. Policy, Amend. of Other Ins. Provision [DN 22-5] ¶ 4.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for

its motion and identifying that portion of the record that demonstrates the absence of a genuine issue

of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party

satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a

genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving

party, the non-moving party must do more than merely show that there is some "metaphysical doubt

as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present

specific facts showing that a genuine factual issue exists by "citing to particular parts of materials

in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine

dispute[.]"  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the

[non-moving party's] position will be insufficient; there must be evidence on which the jury could

reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252.

In considering a motion for summary judgment, the Court must remain cognizant of the role

that expert testimony plays. In this regard, Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or
> education may testify in the form of an opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the testimony is based on
> sufficient facts or data; (c) the testimony is the product of reliable principles and
> methods; and (d) the expert has reliably applied the principles and methods to the
> facts of the case.

Fed. R. Evid. 702. Under Rule 702, the judge acts as a gatekeeper to ensure that expert testimony

is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir.

4

2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 595 (1993).

In Daubert, the Supreme Court identified a non-exhaustive list of factors that may assist the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" in a "relevant scientific community." 509 U.S. at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. Kumho Tire Co., 526 U.S. at 147.

Whether the Court applies the Daubert factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co., 526 U.S. at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to the admissibility, of the evidence. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted).

### III. DISCUSSION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

The parties have filed cross-motions for summary judgment focusing on Netherlands' quantum meruit and equitable subrogation theories, which are found in Counts I and III of the Complaint.[1] The Court considers each theory in turn.

---

[1] Netherlands' breach of contract claim, which is found in Count II of the Complaint, is not addressed in the parties' cross-motions for summary judgment. Accordingly, this claim will remain in the action for future consideration. The parties' motions are **DENIED** as to this claim.

## A. QUANTUM MERUIT/UNJUST ENRICHMENT (COUNT III)

In its summary judgment motion, Netherlands argues that it is entitled to recover one-half of its defense costs under the theory of quantum meruit. Lexington counters that quantum meruit is inapplicable here because Netherlands' claim is controlled either by the parties' express agreement or by the applicable insurance policies. Alternatively, Lexington argues that Netherlands has not met the requirements of quantum meruit. For the following reasons, the Court agrees with Lexington. Netherlands quantum meruit claim must be dismissed as a matter of law.

*Applicability of Quantum Meruit.* Lexington first argues that the theory of quantum meruit has no applicability to this case. According to Lexington, quantum meruit only applies to situations when there is no applicable contract. See Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V., 2010 WL 2696278, at *14 (Ky. App. July 9, 2010) (noting that unjust enrichment "has no application in a situation where there is an explicit contract which has been performed"). Here, Netherlands has alleged that there was a contract in which Lexington agreed to pay for, or reimburse Netherlands for, one-half of the defense expenses and one-half of the attorneys' fees in relation to defending the coaches in the underlying action. Lexington argues that if there was such a contract, quantum meruit is inapplicable. But as Lexington correctly notes, Netherlands has pled its quantum meruit theory in the alternative, meaning that if there was no express contract between the parties, the theory applies. Thus, the Court finds that Netherlands' quantum meruit claim cannot be dismissed on this basis.

Lexington next argues that even if there was no express contract between the parties, quantum meruit is still inapplicable since the insurance policies themselves would determine which company is responsible for the defense costs. The Court agrees. In this case, it is undisputed that the parties

6

had each issued valid insurance policies that covered the coaches' defense. Further, it is undisputed that the terms of Lexington's insurance policy address the payment of defense costs, stating that when Lexington's policy is excess to another policy, it has no duty to defend a suit that any other insurer has a duty to defend. (See Lexington Ins. Co. Commercial Gen. Liab. Policy, Amend. of Other Ins. Provision [DN 22-5] ¶ 4.) This Court's Agreed Order determined that Lexington's policy was excess to Netherlands' policy. (Agreed Order [DN 22-3] 1 (addressing the "priority of insurance coverage").) As such, there is an existing, enforceable policy governing payment. Due to this policy, the Court finds that quantum meruit is unavailable. See Gen. Agents Ins. Co. v. Mandrill Corp., Inc., 243 Fed. App'x 961 (6th Cir. 2007) (dismissing a quantum meruit claim since there was an applicable, controlling contract); Miller v. Reminger Co., L.P.A., 2012 WL 2050239, at * 12 (W.D. Ky. June 6, 2012) (same); see also Ky. Sch. Bds. Ins. Trust v. Horace Mann Ins. Co., 188 F.3d 507 (6th Cir. 1999) (analyzing insurers' policies to determine their priorities). Netherlands' claim must be dismissed.

*Elements of Quantum Meruit.* Even if the Court were to hold that quantum meruit is available, it would still dismiss Netherlands' claim. To prevail under a quantum meruit theory, a plaintiff must prove that: (1) valuable services were rendered; (2) the services were rendered to the person from whom recovery is sought; (3) the services were accepted by that person, or were rendered with that person's knowledge and consent; and (4) the services were rendered under circumstances that reasonably notified the person that the plaintiff expected to be paid. Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n, Inc., 242 S.W.3d 359, 366 (Ky. App. 2007). In this case, the Court finds that Netherlands has failed to prove these required elements.

Netherlands argues that it has sufficiently proven these elements. Specifically, it argues that it rendered a valuable service by defending the coaches and that the service was rendered on behalf

of Lexington, which had a duty to defend in the suit. Netherlands also argues that Lexington accepted the legal services of English, Lucas, Priest & Owsley, LLP by acknowledging their duty to defend the coaches—and that Lexington was aware that Netherlands expected to be paid, as evidenced by the fact that the companies' representatives discussed splitting the defense costs evenly.

However, the Court finds that Netherlands overlooks one critical point: Netherlands itself had a duty to provide a defense to the coaches. In this case, there is no dispute that Netherlands was a primary insurer[2]—and that Netherlands, as a primary insurer, had a duty to provide a defense to the coaches both under its insurance policy's terms and under applicable law. See State Indust., Inc. v. Twin City Fire Ins. Co., 158 Fed. App'x 694, 697 (6th Cir. 2005) (holding that "the majority rule is that where an insured maintains both primary and excess policies . . . the excess insurer is not obligated to participate in the defense until the primary policy limits are exhausted"). Therefore, the Court finds that Netherlands has failed to show that the circumstances reasonably notified Lexington that Netherlands expected to be paid by it. Indeed, because Netherlands undoubtedly had a duty to provide a defense, it cannot be said that the services were performed with the expectation of payment by another. See Quadrille Bus. Sys., 242 S.W.3d at 366 (noting that "where the services rendered benefited both parties, there can be no recovery under the quantum meruit doctrine because services performed for the mutual benefit of both parties are ordinarily done without the expectation of payment"). As such, the Court holds that Netherlands' summary judgment motion is **DENIED** with respect to its quantum meruit theory. The Court also holds that Lexington's summary judgment

---

[2] Notably, Netherlands never argues that its policy was excess or secondary to Lexington's policy. Instead, it appears to argue that both Netherlands and Lexington are primary insurers. (See Reply to Def.'s Resp. to Pl.'s Mot. for Summ. J. & Resp. to Def.'s Mot. for Summ. J. [DN 23] 1–2.)

motion is **GRANTED** in part with respect to this theory.

### B. EQUITABLE SUBROGATION (COUNT I)

In its summary judgment motion, Netherlands next argues that it is entitled to recover one-half of its defense costs under the theory of equitable subrogation. "Equitable subrogation is 'designed to prevent unjust enrichment by requiring those who benefitted from another paying their debt to ultimately pay it themselves.'" Nat'l Sur. Corp. v. Hartford Cas. Ins. Co., 493 F.3d 752, 756 (6th Cir. 2007) (citation omitted). According to Netherlands, Lexington had a duty to defend the coaches and it breached that duty by allowing Netherlands to shoulder the burden of paying all the defense costs. As such, Netherlands maintains that it is entitled to step into the coaches' shoes and pursue this action on their behalf. In support of its position, Netherlands cites a Sixth Circuit case which predicts that the Kentucky Supreme Court would recognize equitable subrogation. See id.

The Court finds that despite the Sixth Circuit's prediction, it is questionable as to whether Kentucky courts would recognize equitable subrogation. In Acceptance Indemnity Insurance Co. v. Liberty Mutual Insurance Co., for example, the Kentucky Court of Appeals noted that it was "not bound to follow" the Sixth Circuit case. 2009 WL 275834, at *2 (Ky. App. Feb. 6, 2009).While the Court did not explicitly rule that there is no such cause of action within Kentucky, deciding instead to "leave further analysis of this cause of action for another day," id. at *3, its decision makes it questionable whether equitable subrogation exists under Kentucky law. The Court finds, however, that it does not need to determine whether equitable subrogation is recognized in Kentucky. Even if it is, Netherlands' argument fails as a matter of law.

The Sixth Circuit has held that equitable subrogation, "as applied in the insurance context, allows an insurer to sue a third party for injuries that the third party caused to the insured, when the

insurer compensated the insured for those injuries." Nat'l Sur. Corp., 493 F.3d at 756. The California

Court of Appeals explained the theory in the context of an insurer's obligation to pay defense costs

in an underlying lawsuit, noting:

> Equitable subrogation allows an insurer that paid coverage or defense costs to be
> placed in the insured's position to pursue a full recovery from another insurer who
> was primarily responsible for the loss. Because this doctrine shifts the entire cost
> burden, the moving party insurer must show the other insurer was primarily liable
> for the loss and that the moving party's equitable position is inferior to that of the
> second insurer. This doctrine commonly applies to shift defense costs between
> primary and excess insurers. As between those insurers, the primary insurer is
> obligated to defend the insured and must bear 100 percent of the defense costs until
> the primary limits have been exhausted. Thus, an excess insurer that pays defense
> costs will frequently obtain a full recovery against the primary insurer on an
> equitable subrogation theory.

Md. Cas. Co. v. Nationwide Mut. Ins. Co., 81 Cal. App. 4th 1082, 1088–89 (2000) (internal citations

omitted). In this case, it is clear that Netherlands was a primary insurer. Netherlands has put forth

no evidence showing that it was an excess insurer. Moreover, the Agreed Order conclusively shows

that Lexington was the excess insurer. As such, the Court finds that Netherlands cannot invoke the

equitable subrogation doctrine to recover its costs from Lexington. This conclusion is supported by

cases from other jurisdictions. See, e.g., U.S. Fid. & Guar. Co. v. Federated Rural Elec. Ins. Corp.,

37 P.3d 828, 831–32 (Okla. 2001) ("In its application the doctrine generally works to shift costs from

the excess insurer to the primary insurer, because the primary insurer is primarily responsible to defend

the insured, and the excess insurer usually has the superior equitable position.").

The Court notes that in its briefs, Netherlands fixates on Lexington's duty to defend, arguing

that this duty somehow requires Lexington to shoulder one-half of the defense costs. But again,

Netherlands never disputes that it was a primary insurer and the Agreed Order clearly determines

that Lexington was the secondary insurer—not another primary insurer. Notably, Netherlands has

cited **no** case law holding that a secondary insurer is responsible to a primary insurer for defense costs prior to the exhaustion of the primary insurer's coverage limits. The only case that Netherlands cites is inapposite to this case.

Netherlands cites James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co. for the proposition that an "insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy." 814 S.W.2d 273, 279 (Ky. 1991). It also cites the case for the proposition that the "duty to defend is separate and distinct from the obligation to pay any claim." Id. According to Netherlands, because the underlying suit alleged acts that could implicate Lexington's policy, Lexington had a duty to defend by paying one-half of the defense costs. However, in James Graham Brown Foundation, Inc., the issue of priority regarding the allocation of defense costs among insurers was not addressed in any way. Instead, the Court addressed a distinct situation where the insured was provided no defense because of the insurers' refusal to provide coverage. Id. at 279–80. Here, the coaches were provided a defense, and Lexington does not argue that it had no duty to defend. Instead, it argues that its duty to defend was secondary to Netherlands' duty. This case, therefore, is different from James Graham Brown Foundation, Inc., as the question here involves an ordering of responsibility among the insurers. Netherlands' equitable subrogation claim fails and its summary judgment motion must be **DENIED.** Lexington's summary judgment motion is **GRANTED** in part as to this issue.

Indeed, the Court finds that Lexington is correct to assert that the "only way that the plaintiff can prevail in its quest for Lexington to pay the legal fees . . . is to show that there was an enforceable contract between the insurance companies in which Lexington agreed to pay for half the cost of the defense of the underlying lawsuit." (Def.'s Resp. to Pl.'s Mot. for Summ. J. & Mem.

11

in Supp. of Def.'s Mot. for Summ. J. [DN 22-1] 5–6.) Accordingly, the only claim that may go forward is Netherlands' breach of contract claim. The parties' motions are **DENIED** as to this claim.

## IV. DISCUSSION REGARDING LEXINGTON'S MOTION IN LIMINE

In its motion in limine concerning Netherlands' expert, David L. Huff, Lexington argues that Mr. Huff's testimony must be excluded because: (1) his opinions will not assist the trier of fact; and (2) his opinions are not reliable. Netherlands counters that Mr. Huff's opinions are both relevant and reliable—and that they should be admitted since they will help the trier of fact understand the issues in this case. For the following reasons, the Court agrees with Lexington.

Mr. Huff is the Senior Vice President of Global Risk Solutions, Inc. (See Curriculum Vitae [DN 26-2] 1.) In this role, he provides services related to insurance recovery. Prior to this position, Mr. Huff was a self-employed consultant. He has also worked as a corporate insurance director, legal counsel to a company's insurance department, a partner of an insurance defense group, and a claims adjuster. (Id. at 1–2.) Based on this experience in the insurance industry, Mr. Huff has been submitted as Netherlands' expert in this matter. He opines that Netherlands and Lexington "had a joint and equal duty to defend the underlying case of The Estate of Ryan Morgan Owens et al. v. Tom Duffy, Sr., et al. and that both insurers should share equally in the cost of the defense provided by attorney Michael Owsley." (Report [DN 26-1] 1.)

Mr. Huff outlines ten bases in support of his opinions. The first six bases focus on portions of the parties' insurance policies. According to Mr. Huff, the polices were both "written on a primary basis," resulting "in the insured having two primary insurers." (Id. at 1–2.) Mr. Huff quotes "virtually identical" provisions in the polices to support his statement that both insurance companies "have the same responsibility in the underlying suit." Mr. Huff then suggests that it is a "generally

12

accepted practice in the insurance industry that if two primary insurers have an equal duty to defend, then they will share equally in the costs to defend the suit." (Id. at 2.) The seventh, eighth, and ninth bases recite portions of the parties' e-mail communications. According to Mr. Huff, these communications "clearly show that . . . Lexington was accepting responsibility for 50% of the legal fees . . . ." (Id. at 2–3.) Finally, the tenth basis states that the Court's prior Agreed Order "is irrelevant on the issue of defense costs" because it was "clearly only addressing payment of claims." (Id. at 3.)

Lexington maintains that Mr. Huff's opinions must be excluded. According to Lexington, it is inappropriate to allow an expert to testify about the parties' legal obligations under an insurance contract. See, e.g., United States v. Zipkin, 729 F.2d 384, 387 (6th Cir. 1984) (adopting the Second Circuit's conclusion that "[e]xpert testimony on the law is excluded because the trial judge does not need the judgment of witnesses"). Moreover, it is inappropriate to allow an expert to interpret the parties' e-mail communications, as experts have no specialized knowledge that would aid in their interpretations. See, e.g., Loeb v. Hammond, 407 F.2d 779, 781 (7th Cir. 1969) (refusing to admit expert testimony since the "question of interpretation of the contract is for the jury and the question of legal effect is for the judge"). Essentially, Lexington argues that Mr. Huff's testimony is nothing more than an improper attempt to instruct the trier of fact on the law in this case.

Netherlands counters that Lexington's arguments ignore the fact that Mr. Huff "used his knowledge of the general practice of the insurance industry to reach his opinion" and "clearly gave weight to the statements of David Riley, the adjuster for Lexington." (Resp. to Def.'s Mot. in Limine to Strike Pl.'s Expert Testimony [DN 29] 2.) According to Netherlands, Mr. Huff's opinion on the parties' alleged responsibility to share the defense costs is factual in nature, based on "the contracts

13

of insurance, the communications between the parties, and the generally accepted practices of the insurance industries." (Id. at 3.) The Court, however, disagrees with Netherlands.

This case boils down to a simple question: whether there was a valid, enforceable contract between Netherlands and Lexington to share the defense costs. As to this question, Netherlands seeks to offer Mr. Huff's opinion that there was such a contract based on the parties' e-mail communications. The Court finds, however, that Mr. Huff's opinion is nothing more than a legal conclusion. Mr. Huff has basically analyzed the facts himself (i.e. the language of the e-mail communications) and drawn a legal conclusion based on his interpretation of these facts (i.e. a contract existed). This is unacceptable. The Sixth Circuit has long held that expert testimony on the law "is excluded because the trial judge does not need the judgment of witnesses." Zipkin, 729 F.2d at 387; see Woods v. Lecureux, 110 F.3d 1215, 1220 (6th Cir. 1997) (holding that it is "apparent that testimony offering nothing more than a legal conclusion-i.e, testimony that does little more than tell the jury what result to reach-is properly excludable under the Rules"). Other courts have reached similar conclusions. See, e.g., A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25, 936 F.2d 472, 476 (10th Cir. 1991) (noting that an expert generally "may not state legal conclusions drawn by applying the law to the facts"). Therefore, the Court will exclude Mr. Huff's opinion that the parties' e-mail communications indicate the existence of a contract. After hearing the evidence, the trier of fact will be able to make its own determination.[3]

---

[3] The Court recognizes that Lexington states that "[n]either the Plaintiff nor Defendant has requested a jury trial in this case" and that the case "will proceed by a bench trial." (Def.'s Reply to the Pl.'s Resp. to Mot. in Limine to Strike Pl.'s Expert Testimony [DN 30] 2.) However, in their answer to Netherlands' complaint, Lexington requests "[a] trial by jury on issues so triable." (Ans. to Compl. [DN 7] 6.) Accordingly, the Court will leave the issue of whether this case will proceed by jury trial for a later date.

Additionally, the Court will exclude Mr. Huff's opinions relating to the insurance policies. As noted above, Mr. Huff analyzes the policies' language and concludes that they were both "written on a primary basis," resulting "in the insured having two primary insurers." (Report [DN 26-1] 1–2.) Mr. Huff quotes "virtually identical" provisions in the polices to support his statement that both insurance companies "have the same responsibility in the underlying suit." Mr. Huff then suggests that it is a "generally accepted practice in the insurance industry that if two primary insurers have an equal duty to defend, then they will share equally in the costs to defend the suit." (Id. at 2.) The Court finds, however, that these opinions also constitute impermissible legal argument. Mr. Huff has basically analyzed the language of the insurance policies and drawn a legal conclusion as to its effect. Again, the Court notes that expert testimony on the law "is excluded because the trial judge does not need the judgment of witnesses." Zipkin, 729 F.2d at 387. Indeed, after examining Mr. Huff's expert report, this Court concludes that the testimony contains "inappropriate legal conclusions about . . . the proper means of interpreting" the relevant insurance policy language, and "strays . . . into an impermissible effort" to usurp the Court's role in resolving "pure legal questions." Coregis Ins. Co. v. City of Harrisburg, 2005 WL 2990694, at *3 (M.D. Pa. Nov. 8, 2005); see also Jimkoski v. State Fire Mut. Auto. Ins. Co., 247 Fed. App'x 654, 662 (6th Cir. 2007); Wells v. C.J. Mahan Constr. Co., 2006 WL 951444, at *6 (Ohio App. Apr. 11, 2006) (holding that the trial court erred in allowing expert testimony as to the meaning of a provision in a written shareholder agreement). The Court will exclude Mr. Huff's opinion that the parties were both primary insurers.

Likewise, the Court will exclude Mr. Huff's opinion that the Agreed Order "is irrelevant on the issue of defense costs" because it was "clearly only addressing payment of claims." (Report [DN

26-1] 3.) The terms of the Agreed Order are unambiguous. They address "the priority of insurance coverage." (Agreed Order [DN 22-3] 1.) The Agreed Order never indicates that its priority determination only applies to the priority of payments–nor does it indicate that its priority determination does not apply to the parties' duty to defend. Mr. Huff's bold assertion as to the Agreed Order's relevance is, again, an impermissible legal conclusion. See Thomas Noe, Inc. v. Homestead Ins. Co., 173 F.3d 581, 583 (6th Cir.1999) (holding that when an insurance policy exclusion was unambiguous, evidence of an expert witness's conclusion to the contrary is not admissible); see also Doe v. Magoffin Cnty. Fiscal Ct., 174 Fed. App'x 962, 974 (6th Cir.2006) ("Simply having experts restate general facts and announce legal conclusions without any analysis does not create a genuine issue of material fact."); Williams v. Ford Motor Co., 187 F.3d 533, 543 (6th Cir.1999) ("[I]n order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues." (citation omitted)). It appears to the Court that Mr. Huff's report is nothing more than an improper attempt to re-litigate the issue of priority. Accordingly, the Court will exclude his testimony.

In sum, the Court will not permit Mr. Huff to testify to legal conclusions. He cannot testify as to the legal meaning or effect of certain insurance provisions or the effect of this Court's Agreed Order. It is the Court's belief that allowing his testimony would invade the province of the trier of fact. The testimony would only serve as a source of confusion. It would, in essence, allow Mr. Huff to make the legal arguments for Netherlands' counsel. As the Supreme Court has noted,

> [E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.'

Salem v. U.S. Lines Co., 370 U.S. 31, 35 (1962) (citation omitted).  Here, after hearing the

16

testimony of witnesses, the trier of fact will be able to decide whether there was a contract between the parties. As to this issue, Mr. Huff possesses no specialized knowledge and, thus, he cannot possess an expert opinion. Lexington's motion in limine to strike Mr. Huff's testimony is thus **GRANTED**.

### V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [DN 16] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [DN 22] is **GRANTED** in part and **DENIED** in part. It is **GRANTED** as to Netherlands' quantum meruit and equitable subrogation claims, which are found in Counts I and III of the Complaint. It is **DENIED** as to Netherlands' breach of contract claim, which is found in Count II of the Complaint.

**FURTHER** that Defendant's Motion in Limine to Strike Plaintiff's Expert Testimony [DN 27] is **GRANTED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

May 14, 2013

cc:     counsel of record

17